**MICHAEL E. FARNELL,** OSB# 922996
E-mail: mfarnell@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, Oregon 97205
Telephone: (503) 222-1812
Facsimile: (503) 274-7979
*Of Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **OREGON SHAKESPEARE FESTIVAL ASSOCIATION, an Oregon non profit corporation**, | Case No. 1:15-CV-01932-CL |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR *PARTIAL* SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF** |
| **GREAT AMERICAN INSURANCE COMPANY, an Ohio for-profit corporation,** | |
| Defendant. | **(ORAL ARGUMENT REQUESTED)** |

**PLAINTIFF'S MOTION FOR *PARTIAL* SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**
O:\9426002\0043c motion and memo for MSJ.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

# Table of Contents

Table of Authorities ........................................................................................................... i

LR 7.1(a) CERTIFICATION..............................................................................................1

MOTION ...............................................................................................................................1

MEMORANDUM IN SUPPORT OF MOTION ................................................................1

    I.      INTRODUCTION...............................................................................................1

    II.     FACTUAL STATEMENT ................................................................................4

    III.    THE INSURANCE POLICY...........................................................................8

    IV.    APPLICABLE STANDARDS ........................................................................10

         A.     Summary Judgment Standard................................................................10

         B.     The Legal Standard Governing Interpretation of
                Insurance Policies.................................................................................11

    V.     ARGUMENT..................................................................................................13

         A.     There is no dispute that OSF incurred a loss of business
                income due to a slowdown or cessation of its operations. ...................13

         B.     The smoke saturating the interior confines of the Elizabethan Theatre
                constitutes "physical loss or damage" to property...............................14

             1.     The plain-language interpretation of the phrase "physical loss
                       or damage" indisputably means any injury or harm to a
                       natural or material thing, such as the theater...........................14

             2.     Decisional case law from Oregon and across the
                       country likewise concludes that gases, odors,
                       and particles constitute "physical loss or damage"
                       to property. ...............................................................................15

             3.     Even assuming that Great American could advance
                       a reasonable alternative interpretation of "physical
                       loss or damage" to property, thereby rendering
                       the phrase ambiguous, Oregon's rules of policy interpretation
                       dictate that the ambiguity be
                       resolved in favor of OSF.............................................................21

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

      C.      Further, the plain terms of definition of "period of restoration" include the time it took for the smoke inside the Elizabethan Theatre to dissipate..................................................................22

    **VI.**    **CONCLUSION** .................................................................24

**Certificate of Compliance**.............................................................. i

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................................10, 11

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, 1999 WL 619100 (D. Oregon August 4, 1999)............17

*Cooper v. Travelers Ind. Co.*, 2002 WL 32775680 (N.D. Cal.) ....................................................21

*Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009) ...............................................19

*Farmers Ins. Co. v. Trutanich*, 123 Or. App. 6, 858 P.2d 1332 (1993).................................17, 18, 23

*Gregory Packaging, Inc. v. Travelers Property Cas. Co.*, 2014 WL 6675934
(D.N.J., Nov. 25, 2014)..........................................................................................20, 21, 23, 26

*Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 985 P.2d 1284 (1999)..................................12

*Hoffman Constr. Co. v. Fred S. James & Co. of Or.*,
313 Or. 464, 836 P.2d 703 (1992)...........................................................................4, 12, 13, 24, 27

*Konell Constr. & Demolition Corp. v. Valiant Ins. Co.*, 2006 WL 1360956 (D Or)...........................13

*Land v. West Coast Life Ins. Co.*, 201 Or. 397, 270 P.2d 154 (1954)..............................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..........................................11

*Matzner v. Seaco Ins. Co.*, 1998 WL 566658 (Mass. Super. Aug. 12, 1998) ....................................19

*Mellin v. N. Sec. Ins. Co., Inc.*, 167 N.H. 544 (2015) (Apr. 24, 2015) ............................................22

*Motorists Mutual Ins. Co. v. Hardinger*, 131 F. App'x 823 (3rd Cir. 2005) ....................................19

*Mut. of Enumclaw Ins. Co. v. Rohde*, 170 Or. App. 574, 13 P.3d 1006 (2000)..................................12

*N. Pac. Ins. Co. v. Am. Mfrs. Mut. Ins. Co.*, 200 Or. App. 473, 115 P.3d 970 (2005).......................12

*North Pacific Ins. Co. v. Hamilton*, 332 Or. 20, 22 P.3d 739 (2001)...........................................12, 14

*Playboy Enters., Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) .......................................................11

*Port Authority of New York and New Jersey v. Affiliated FM*, 311 F.3d 226 (3d Cir. 2002).............20

*Prudential Property & Casualty Ins. Co. v. Lillard-Roberts*, 2002 WL 31495830 (D. Or.)...............18

*Schlamm Stone & Dolan LLP v. Seneca Ins. Co.*, 2005 WL 600021 (NY Sup.)...................21, 22, 23

*Sentinel Management Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296 (Minn. 1997) .....................19

*Stack Metallurgical Services Inc. v. Travelers Ind. Co. of Connecticut*,
2007 WL 464715 (D. Or.)....................................................................................................18, 26

*Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054 (9th Cir. 2002)...................................................11

*Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (Colo. 1968)...........19

*White Mountain Communities Hosp. Inc. v. Hartford Cas.*,
2015 WL 1755372 (D. Ariz. 2015)..............................................................................22, 23, 26

## Other Authorities

Webster's Third New Int.'l, Dictionary 1338 (unabridged ed. 1993) ...................................................14

Webster's Third New Int.'l, Dictionary 1706 (unabridged ed. 1993) ...................................................14

Webster's Third New Int.'l, Dictionary 1923 (unabridged ed. 1993) ...................................................22

## Rules

Fed. R. Civ. P. 56 .................................................................................................................................1

Rule 56(e)............................................................................................................................................10

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

Counsel for Plaintiff, Oregon Shakespeare Festival Association ("OSF"), and counsel for Defendant, Great American Insurance Company ("Great American"), conferred by telephone regarding this motion, but were unable to resolve their dispute.

## MOTION

OSF incurred significant losses as a result of wildfires in 2013 that triggered the business income coverage in its policy with Great American. These wildfires ultimately forced the cancellation of four performances because of a toxic brew of heavy wildfire smoke that inundated OSF's Elizabethan Theatre. The cancellations in turn resulted in lost business income.

Pursuant to Fed. R. Civ. P. 56, OSF now moves the Court for partial summary judgment in its favor on each the following three issues, only: (1) a ruling that OSF suffered loss of business income; (2) a ruling that the smoke inside the Elizabethan Theatre constituted "physical loss or damage" to property; and (3) a ruling that "period of restoration" includes the time it took for the smoke to dissipate.

The total amount of OSF's loss and its resulting damages are not at issue in the instant motion. Those are genuine issues of material fact for the jury.

## MEMORANDUM IN SUPPORT OF MOTION

## I. INTRODUCTION

This is an insurance coverage dispute arising out of Great American's wrongful refusal to pay insurance benefits. In late July and early August 2013, Ashland was besieged by the confluence of multiple, out-of-control wildfires. The interior of OSF's

Page - 1  **PLAINTIFF'S MOTION FOR *PARTIAL* SUMMARY JUDGMENT AND MEMO I/S THEREOF**
O:\9426002\0043c motion and memo for MSJ.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

Elizabethan Theatre was filled with smoke and the theater's seating, HVAC, lighting and electronic systems were coated with a layer of ash and soot.

An intolerable combination of fine particulate matter, carbon monoxide and nitrogen dioxide left OSF with no choice but to cancel four performances in OSF's Elizabethan Theatre. Indeed, EPA guidance strongly recommended the performances be cancelled. The consequent loss of business revenue arising from these cancelled performances is precisely the sort of loss Great American agreed to cover. That it has refused to do so is a disappointment to this nonprofit corporation.

The plain terms of Great American's policy provide that the insuring agreement is triggered if there is (a) any loss of business income due to a slowdown or cessation of OSF's operations caused by (b) "physical loss or damage" to property at the premises (c) until that loss or damage is restored, referred to as the "period of restoration" (and, by virtue of Great American's extended business income coverage, until business returns to levels had there not been any loss or damage). Notably, the policy places no limitation on what property in the theater must sustain "physical loss or damage," and Great American chose not to define the terms "physical," "loss," or "damage" within the policy.

Great American nevertheless takes the position that it will never have an obligation to pay because the air inside the Elizabethan Theatre cannot be the subject of "physical loss or damage." Great American contends that air, however toxic, cannot be damaged. Thus, according to Great American, the undisputed fact that smoke permeated

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

the theater does not constitute "physical loss or damage" to property at the premises. And, according to Great American, because there is no "physical loss or damage" to property, no covered loss could result.

The defects in Great American's coverage position are clear. First, for Great American to refer to "air," standing alone, is misleading. It is the fact that the interior space of the theater was damaged by smoke that matters. The "physical loss or damage" occurred when the smoke saturated the inside of the theater. If, for example, mustard gas completely filled a house, one would not deny that the house had been damaged. It strains credibility to claim, as Great American does here, that the house in that example was not damaged when the mustard gas was dropped inside. It is the same thing here; the space inside the theater, and the air that occupied that space, was damaged. And that is exactly what cases across the country have held. *See, e.g.,Gregory Packaging, Inc. v. Travelers Property Cas. Co.*, 2014 WL 6675934 (D.N.J., Nov. 25, 2014) (finding that a release of ammonia "physically transformed the air" within the facility such that until the gas dissipated there was direct "physical loss or damage" to the plant for purposes of business income coverage).

The indisputable facts therefore trigger Great American's coverage obligation. Critically, indeed dispositively for purposes of this motion OSF's reading of the policy language does not have to be right; it only has to be reasonable. Accordingly, assuming Great American could somehow offer a reasonable competing interpretation of its business income insuring agreement, that would merely result in an ambiguity, which as a matter of law is resolved in favor of the insured every time. *Hoffman Constr. Co. v.*

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

*Fred S. James & Co. of Or.*, 313 Or. 464, 469-71, 836 P.2d 703 (1992) (finding that if multiple interpretations are reasonable the provision is ambiguous, but that the insured need only offer a *single* reasonable interpretation to prevail). Here, OSF's interpretation is not just reasonable; decisional law from Oregon and across the country again clearly establishes that poor air quality alone constitutes direct physical loss and/or damage to property. Those cases also clearly establish that the "period of restoration" includes the time it takes for smoke, gas, or vapor to dissipate from, as here, the interior of a building.

At bottom, OSF's business was interrupted due to smoke damage in the Elizabethan Theatre, which engulfed the property. Therefore, while the full amount of OSF's loss and its resulting damages are genuine issues of material fact for the jury, there is no disputed question of material fact that:

(1) OSF suffered at least some loss of business income when it cancelled performances;

(2) The smoke inside the Elizabethan Theatre constitutes "physical loss or damage" to property; and

(3) The "period of restoration" includes the time it took for the smoke to dissipate. OSF now moves for partial summary judgment on each of these issues.

## II. FACTUAL STATEMENT

In late July and early August 2013, Ashland was inundated by smoke from nearby wildfires.[1] This smoke filled the interior of OSF's Elizabethan Theatre, coating its

---

[1] Declaration of Michael E. Farnell ("Farnell Decl.) at Exhibit A (Roos EUO at 20:8-25; and 28:7-16)

Page - 4  **PLAINTIFF'S MOTION FOR *PARTIAL***
**SUMMARY JUDGMENT AND MEMO I/S THEREOF**
O:\9426002\0043c motion and memo for MSJ.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

interior with a layer of ash and soot, including the seating, HVAC, lighting and electronic systems.[2]

OSF was ultimately forced to cancel four performances because of the very unhealthy levels of toxic smoke inside the theater: July 30, 2013, July 31, 2013, August 1, 2013, and August 7, 2013.[3]  The cancellations in turn resulted in approximately $373,470 in lost ticket sales and concessions.[4]  OSF also incurred roughly $7,651 in extra expenses to minimize the slowdown of its operations.[5]  These extra expenses included the cost to relocate performances to Ashland High School.[6]  It also included the cost to change air filters three or four times over a period during which they would have normally been changed only once.[7]  OSF further incurred the cost of materials to remove the ash and soot from the theater's seats, walkways, stage, lighting and sound equipment.[8]

OSF's Elizabethan Theatre is styled after London's 1599 Fortune Theatre insofar as it is walled and partially enclosed, but without a complete roof.[9]  On the night of each cancelled performance, OSF's executive director, Cynthia Rider, consulted a committee

---

[2] Farnell Decl. at Exhibit B (Tacconi EUO at 32:2-24), Exhibit C (Rider EUO at 38:6-25); Exhibit D (Resch EUO at 10:11-22); and Exhibit E (Taylor EUO at 17:6-12).
[3] Farnell Decl. at Exhibit C (Rider EUO at 11:18-25; 12:1-4; 25:2-6; and 33:14-18), Exhibit A (Roos EUO at Exhibit 4 – Cancellation Criteria); and Exhibit F (4/28/14 correspondence at pages 4-7).
[4] Farnell Decl., Exhibit A (Roos EUO at Exhibit 2 – Proof of Loss).
[5] *Id.*
[6] *Id.*
[7] Farnell Decl. at Exhibit D (Resch EUO at 10:15-25; 11:1-21; and 12:1-5).
[8] Farnell Decl. at Exhibit E (Taylor EUO at 17:6-12; 20:4-9; and 22:11-17) and Exhibit G (Wallace EUO at 26:1-23).

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

(of which she was the chairperson) comprised of a total of eight OSF employees and managers.[10] The committee met at 6:15-6:30 p.m. to determine whether the smoke inside the Elizabethan Theatre required cancellation.[11] Decisions were announced by 7:00 p.m. prior to each performance.[12] EPA air quality guidance strongly recommended that these shows be cancelled.[13] The air quality inside the theater was considered "very unhealthy" under EPA guidance.[14]

With respect to each of the cancelled performances, it is uncontroverted that the toxic brew of wildfire smoke inside the physical boundaries of the theater necessitated the cancellations.[15] For example, OSF's safety director, Jan Tacconi, testified as follows:

> Q: Did you yourself ever see any physical loss or damage to any property owned by Oregon Shakespeare Festival that you felt was caused by any wildfires in the summer of 2013?"
> A: Okay. Certainly because the Elizabethan theater is not enclosed, and we cannot control the air quality, we had a significant loss of air quality in that arena.[16]

Likewise, Cynthia Rider testified that the air inside the Elizabethan Theatre was damaged, stating:

---

[9] Farnell Decl., Exhibit A (Roos EUO at Exhibit 12B – Photo); Exhibit B (Tacconi EUO at 32:2-24); and https://en.wikipedia.org/wiki/Oregon_Shakespeare_Festival.

[10] Exhibit A (Roos EUO at Exhibit 4 – Cancellation Criteria); and Exhibit C (Rider EUO at 17:9-25; 18:1-25; and 25:2-16).

[11] *Id.*

[12] *Id.*

[13] Farnell Decl. at Exhibit F (4/28/14 correspondence at pages 4-7); Exhibit B (Tacconi EUO at 32:2-24), Exhibit C (Rider EUO at 38:6-25); Exhibit D (Resch EUO at 10:11-22); and Exhibit E (Taylor EUO at 17:6-12).

[14] *Id.*

[15] Farnell Decl. at Exhibit C (Rider EUO at 11:18-25; 12:1-4; 25:2-6; and 33:14-18), Exhibit A (Roos EUO at Exhibit 4 – Cancellation Criteria); and Exhibit F (4/28/14 correspondence at pages 4-7).

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

> Q: Okay. Did you ever observe any physical loss or damage to any OSF property from the smoke or forest fires?
> A: Well, the damage was to the facility itself, meaning it was unusable in certain times versus like the seats didn't fall apart; you didn't have anywhere to sit.
> Q: Nothing was broken, nothing had to be repaired?
> A: Was anything repaired. I think most of the stuff was cleaned.
> Q: Once cleaned, the condition was cured?
> A: No, because the damage to the air was still there. The function -- that was still there.
> Q: I'm talking about the property.
> A: The physical property.
> Q The physical property was okay and was cured, but the air didn't get changed?
> A: Right. You could clean the seats but you couldn't change --
> Q: The air?
> A: the damage to the air.[17]

Similarly, OSF's production director testified that poor air quality resulted in the cancellations:

> Q: On every occasion when a cancellation would occur physically, *not the air quality* [emphasis added] but just physical conditions within the theater *excluding the air* [emphasis added], so we are talking about property, the building itself or chairs or whatever property there are in the theater, it was ready to go but the air quality wasn't ready to go. Is that a fair way to describe it?
> A: Yeah. And the people running the show weren't ready to go.
> Q: Because of health concerns?
> A: Because of the air quality.[18]

As a result of these cancellations and the extra expenses incurred to minimize lost revenue, OSF immediately submitted a claim to Great American under the business income and extra expense provisions of its insurance policy.[19] Over the next two years,

---

[16] Farnell Decl. at Exhibit B (Tacconi EUO at 32:2-10).
[17] Farnell Decl. at Exhibit C (Rider EUO at 38:6-24).
[18] Farnell Decl. at Exhibit H (Holden EUO at 17:13-23).
[19] Farnell Decl. at Exhibit I (10/15/13 GAIC denial letter).

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

Great American not only failed to conduct a full and complete investigation of the claim, it intentionally disregarded strong and substantial evidence that the presence of smoke inside the space of the theater constituted "physical loss or damage."[20]

Great American also repeatedly violated minimum standards of claims handling conduct. Indeed, Great American refused to reconsider its denial while at the same time demanding ever increasing amounts of information from OSF.[21] Great American ultimately required examinations under oath of 14 (fourteen) separate OSF personnel.[22] And yet Great American denied the claim in 2015 based on the same factual issue it relied on to deny the claim in 2013.[23] Great American needlessly wasted OSF's time and money, forcing OSF to jump through countless hoops under a constant threat that OSF's "failure to cooperate" would become the new basis for denial.[24]

## III. THE INSURANCE POLICY

OSF is the named insured under a policy of property and casualty insurance issued by Great American bearing policy number PAC 804-95-53-05, which was effective between January 1, 2013, and January 1, 2014 (the "Policy").[25] Subject to certain

---

[20] Farnell Decl. at Exhibit I (10/15/13 GAIC denial letter); Exhibit F (4/28/14 correspondence at pages 4-7); Exhibit J (5/13/14 GAIC denial letter); and Exhibit K (8/8/14 correspondence).
[21] Farnell Decl. at Exhibit L (5/14/15 correspondence) and Exhibit M (5/19/15 correspondence).
[22] Farnell Decl. at N (Group Exhibit – EUO caption pages).
[23] Farnell Decl. at Exhibit I (10/15/13 GAIC denial letter); and Exhibit O (8/10/15 GAIC denial letter).
[24] Farnell Decl. at Exhibit L (5/14/15 correspondence) and Exhibit M (5/19/15 correspondence).
[25] Complaint [Dkt. No. 1], Ex A., Policy.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

exclusions not pertinent here, the Policy insures OSF against "physical loss or damage"

incurred during the policy period, including:

> ***[T]he actual loss of Business Income you sustain due to the
> necessary "suspension" of your "operations" during the "period of
> restoration." The "suspension" must be caused by direct physical
> loss of or damage to property at premises which are described in the
> Declaration and for which a Business Income Limit of Insurance is
> shown in the Declarations. The loss or damage must be caused by or
> result from a Covered Cause of Loss.[26]

Business Income means the:

> a. Net Income (Net Profit or Loss before income taxes) that would
> have been earned or incurred; and
>
> b. continuing normal operating expenses incurred, including
> payroll.[27]

Importantly, "suspension" is not a complete shutdown; rather the Policy provides instead

that "suspension" means "the slowdown or cessation of your business activities...."[28]

The Policy further defines "period of restoration" as the period beginning at the time of

physical loss or damage and ending when the property is restored.[29]

But business income coverage does not stop as soon as the "period of restoration"

ends. Instead, Great American's Extended Business Income provision provides coverage

for OSF's business income losses until its operations return to the level which would

---

[26] Complaint [Dkt. No. 1], Ex A., Policy, 76.

[27] *Id.*

[28] Complaint [Dkt. No. 1], Ex A., Policy, 86.

[29] Complaint [Dkt. No. 1], Ex A., Policy, 85, and, as amended by endorsement at 108.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

generate the amount of business income that would have existed had there been no physical loss or damage.[30]

Further, the Signature Property Broadening Endorsement provides an *additional* $100,000 in business income coverage, subject to the same business income insuring agreement set forth above.[31]  This includes an additional 90 days of coverage for business income losses until business returns to a level that would have existed if there had been no physical loss or damage.[32]

## IV. APPLICABLE STANDARDS

### A. Summary Judgment Standard

In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[30] Complaint [Dkt. No. 1], Ex A., Policy, 77-78, and 129-130.
[31] Complaint [Dkt. No. 1], Ex A., Policy, 129-130.
[32] Complaint [Dkt. No. 1], Ex A., Policy, 129-130.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

Summary judgment is not proper if material factual issues exist for trial.  *Celotex Corp.*, 477 U.S. at 323.  The court cannot weigh the evidence or determine the truth and must construe the evidence in the light most favorable to the nonmoving party.  *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).

## B.  The Legal Standard Governing Interpretation of Insurance Policies

Oregon law on the interpretation of insurance policies is clear:

> The interpretation of an insurance policy is a question of law.  A court's goal in interpreting a policy is to determine the intent of the parties.  Intent is determined by looking to the terms and conditions of the policy.  The policy "must be viewed by its four corners and considered as a whole."  All parts and clauses of the policy must be construed to determine if and how far one clause is modified, limited or controlled by others.

*North Pacific Ins. Co. v. Hamilton*, 332 Or. 20, 24, 22 P.3d 739 (2001) (citations omitted).

Insurance policies are construed from "the perspective of the 'ordinary purchaser of insurance.'"  *N. Pac. Ins. Co. v. Am. Mfrs. Mut. Ins. Co.*, 200 Or. App. 473, 478, 115 P.3d 970 (2005).  Undefined policy terms are generally given their ordinary and common meaning.  *Mut. of Enumclaw Ins. Co. v. Rohde*, 170 Or. App. 574, 579, 13 P.3d 1006 (2000).  Where policy terms are unambiguous, they are enforced as written.  *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 308, 985 P.2d 1284 (1999).

/ / /

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

However, where policy terms are susceptible to more than one interpretation, Oregon courts resort to a series of analytical steps to resolve the interpretative dispute. *Hoffman Constr. Co. v. Fred S. James & Co. of Or.*, 313 Or. 464, 469-71, 836 P.2d 703 (1992). Courts first determine whether the competing interpretations are plausible when viewed in isolation. *Id.* If they are, courts next view the competing interpretations in light of the immediate context of the policy language and in the broad context of the policy as a whole. *Id.* If only one interpretation continues to be reasonable after contextual review, that interpretation controls. *Id.* If, however, both interpretations continue to be reasonable, the policy language is deemed legally ambiguous and is construed in favor of coverage for the insured. *Id.* In other words, the insurer prevails by demonstrating that its interpretation is the only reasonable one and the policy cannot be read any other way. Conversely, if the insured offers a single reasonable interpretation, that interpretation controls, irrespective of any other reasonable interpretations offered by the insurer. *See Konell Constr. & Demolition Corp. v. Valiant Ins. Co.*, 2006 WL 1360956, at *4 (D Or) (holding that the insured's interpretation need only pass a minimum threshold of reasonableness to prevail, regardless of whether it is the "better of the two").

Within this framework, other interpretive principles are at play, as well. Under Oregon law, the policy is given "a liberal construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed in support of a view that will protect the insured and defeat a forfeiture." *Land v. West Coast Life Ins. Co.*, 201 Or. 397, 401, 270 P.2d 154 (1954). Because insurers have

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

unfettered power to draft policy language as they see fit, courts burden them with the consequences of poor drafting. *E.g., N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 29, 22 P.3d 739 (2001) ("It is the insurers' burden to draft exclusions and limitations that are clear" and "the court does not permit the party who drafted the term or phrase to benefit from the obscurity").

## V. ARGUMENT

As noted, the terms of the business income insuring agreement are triggered by any (1) loss of business income due to a slowdown or cessation of OSF's operations caused by (2) "physical loss or damage" to property (3) during the period that such loss or damage is restored (and, by virtue of Great American's extended business income coverage, until business returns to levels had there not been any loss or damage). Here, each of those elements is satisfied as a matter of law.

### A. There is no dispute that OSF incurred a loss of business income due to a slowdown or cessation of its operations.

There is no question of disputed fact that OSF lost business income when it cancelled the four performances at issue. Not even Great American can deny there was a slowdown or cessation of OSF's operations. None of those shows went forward. And OSF refunded the tickets for those cancelled performances, at a minimum. As a result, and whatever other disputes may exist, there is no disputed question of material fact that OSF incurred at least some measure of lost business income as result of slowdown or cessation of its operations because of the cancellations on July 30, 2013, July 31, 2013, August 1, 2013, and August 7, 2013.

**B.** **The smoke saturating the interior confines of the Elizabethan Theatre constitutes "physical loss or damage" to property.**

    **1.** <u>The plain-language interpretation of the phrase "physical loss or damage" indisputably means any injury or harm to a natural or material thing, such as the theater</u>.

The Policy does not define the term "physical loss." Nor does it define the term "damage." Under Oregon's rules of policy interpretation that means the phrase "physical loss or damage" to property must be given its ordinary and common meaning.

A plain-language, common meaning interpretation of "physical loss or damage" requires application of the rules of grammar. The word "physical" precedes the words "loss or damage." A descriptive word that precedes a noun modifies that noun. As such, "physical" describes the type of loss that is covered. And "physical" means "of or belonging to all created existence; relating to or in accordance with the laws of nature; of or relating to natural or material things as opposed to things mental, moral, or spiritual." Webster's Third New Int.'l, Dictionary 1706 (unabridged ed. 1993).[33]

Based upon these definitions, the "physical" aspect of the loss or damage must be to a "natural or material" thing. Correspondingly, "loss" refers to the "state or act of being destroyed or placed beyond recovery" or the "amount of an insured's financial detriment due to the occurrence of a stipulated event…" Webster's Third New Int.'l, Dictionary 1338 (unabridged ed. 1993). At the same time, "damage" means "loss due to injury; injury or harm to person, property, or reputation."

---

[33] *Gonzales v. Farmers Ins. Co. of Oregon*, 210 Or. App. 54, 60, 150 P.3d 20 (2006) (recognizing that Oregon courts refer to dictionary definitions when looking for the

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

Taken together, the plain meaning of "physical loss or damage" to property is therefore any injury or harm to a natural or material thing. Here, that is precisely what occurred. The fine particulate matter, carbon monoxide and nitrogen dioxide that made up the smoke physically transformed the air within the interior confines of the theater. That interior space, and the air that occupied that space, was therefore damaged. And that is clearly injury or harm to a natural or material thing; the theater, including all of the air inside the theater. Great American also cannot realistically claim that it did not understand that smoke itself could be the subject of a covered loss. Its own policy excludes coverage for "smoke, vapor or gas from agricultural smudging or industrial operations."[34] In this case, there is no agricultural smudging or industrial operations that could otherwise potentially trigger the exclusion. But it is clear that if Great American meant to exclude coverage for all smoke, it could easily have done so. The above plain-language review demonstrates that Great American's policy language is unambiguous and that the wildfire smoke permeating the Elizabethan Theatre constitutes "physical loss or damage" to property as a matter of law.

## 2. Decisional case law from Oregon and across the county likewise concludes that gases, odors, and particles constitute "physical loss or damage" to property.

As above, Oregon clearly holds that vapors and gases, such as the toxic brew of wildfire smoke that filled the interior space of the Elizabethan Theatre, have a material

---

ordinary meaning of undefined terms in insurance policies just as the "ordinary purchaser of insurance" would do in seeking to understand such an undefined term).

[34] Complaint [Dkt. No. 1], Ex A., Policy, at 92.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

existence that can cause damage. *See Martin v. Reynolds Metals Co.*, 221 Or. 86, 89-91, 342 P.2d 790 (1960) (fluoride compounds from aluminum plant consisting of gases, fumes, and particulates, invisible to naked eye, constitute "physical intrusion"); and *Davis v. Georgia Pacific*, 251 Or. 239, 243, 445 P.2d 481 (1968) ("fumes, gases, smoke, and odors" constitute "direct physical invasion").

Oregon law also recognizes that smoke, odor, or gas invading a building constitutes "physical loss or damage" to that building. *See Farmers Ins. Co. v. Trutanich*, 123 Or. App. 6, 11, 858 P.2d 1332 (1993) (concluding that "the odor produced by [a] methamphetamine lab had infiltrated the house" and as such there was "evidence that the house was physically damaged by the odor that persisted in it" constituting a "direct physical loss."); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, 1999 WL 619100 at *6-7, (D. Oregon August 4, 1999) (unpublished) (noting that physical damage to property can be demonstrated by presence of strong pervasive, persistent or noxious odor).

For example, in *Trutanich* the claim involved a house with methamphetamine odor, the persistence of which the court deemed "physical" damage. More specifically, the court found that the property was physically damaged by the odor inside the house, alone. That is not surprising. Damage can occur, even if not observed by the naked eye. *See also Prudential Property & Casualty Ins. Co. v. Lillard-Roberts*, 2002 WL 31495830 (D. Or.) (citing *Trutanich* with approval and finding that physical damage can occur at the molecular level and can be undetectable).

Likewise, the Oregon District Court has held that microscopic or suspended material constitutes physical loss or damage to property. *Stack Metallurgical Services*

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

*Inc. v. Travelers Ind. Co. of Connecticut*, 2007 WL 464715 (D. Or.) (Holding that

"[t]hough the terms 'direct physical loss' and 'physical damage'" are not defined in the

Policy, it "was only logical to conclude" that the physical change to the air inside the

furnace because of lead particles is a "direct physical loss of or damage to" the furnace).

The results elsewhere are no different. As discussed below, it is widely

recognized that smoke, gases, and particulates that fill the interior of a building, and the

air occupied by that space, constitute "physical loss or damage" to property. *See, e.g.,*

*Matzner v. Seaco Ins. Co.*, 1998 WL 566658, *3 (Mass. Super. Aug. 12, 1998) (finding

that the presence of carbon monoxide contamination inside a structure constitutes direct

physical loss); *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 39, 437

P.2d 52 (Colo. 1968) (determining that direct physical loss had occurred after receiving

evidence of extensive accumulation of gasoline around and under a church building that

rendered premises uninhabitable, even though the fuel was below explosion levels);

*Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (under

Massachusetts law, unpleasant odor constitutes physical injury to property); *Motorists*

*Mutual Ins. Co. v. Hardinger*, 131 F. App'x 823, 825-27 (3rd Cir. 2005) (under

Pennsylvania law, contamination of well water constitutes "direct physical loss" to the

insured house supplied by the well); *Sentinel Management Co. v. New Hampshire Ins.*

*Co.*, 563 N.W.2d 296 (Minn. 1997) (holding that asbestos contamination of apartment

buildings constituted "direct physical loss" under all-risk policy, even though asbestos

contamination did not result in injury to physical structure of building itself); *Port*

*Authority of New York and New Jersey v. Affiliated FM*, 311 F.3d 226 (3d Cir. 2002)

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

(finding that the presence of large quantities of asbestos in the air of a building was physical damage).

For example, in *Gregory Packaging, Inc. v. Travelers Property Cas. Co.*, 2014 WL 6675934 (D.N.J., Nov. 25, 2014), the court determined that an ammonia release "physically transformed the air" within the facility until the gas dissipated and thereby inflicted direct physical loss or damage to the plant. The court explained that it was undisputed "that the ammonia release . . . rendered Gregory Packaging's facility physically unfit for normal human occupancy and continued use until the ammonia was sufficiently dissipated." Further stating:

> Before the ammonia discharge, the facility was in a satisfactory state for human occupancy and continued build-out, but after the ammonia discharge its state was unsatisfactory and required remediation. The Court finds that Gregory Packaging would be entitled to partial summary judgment that the ammonia discharge caused "physical loss of or damage to" its facility under Georgia law because there is no genuine dispute that the ammonia released physically changed the facility's condition to an unsatisfactory state needing repair.

*Id.* at * 7.

Similarly, in *Cooper v. Travelers Ind. Co.*, 2002 WL 32775680 (N.D. Cal.), a well serving the insured's restaurant became contaminated with E. coli, forcing the restaurant to close. The insured sought business income coverage under a form almost identical to the one at issue here. In subsequent coverage litigation the court found that the closure was a necessary suspension of operations that resulted from direct physical damage to the property at the insured premises. If a court is not going to question that E. Coli in the

Page - 18 **PLAINTIFF'S MOTION FOR *PARTIAL* SUMMARY JUDGMENT AND MEMO I/S THEREOF**
O:\9426002\0043c motion and memo for MSJ.doc

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

water supply is "physical loss or damage" to property, how is smoke that fills the interior space of a theater not also "physical loss or damage" to property?

Likewise, *Schlamm Stone & Dolan LLP v. Seneca Ins. Co.*, 2005 WL 600021 (NY Sup.) involved an insured law firm near the World Trade Center during the September 11, 2001 attacks. The law firm claimed that the dust, soot and smoke from the World Trade Center in its office caused a suspension of operations and sought business income coverage from its insurer. As Great American does here, the insurer in *Schlamm Stone* claimed that the presence of particles in the office did not constitute physical loss or damage. The court disagreed, finding instead that "the presence of noxious particles, both in the air and on the surfaces of the plaintiff's premises, would constitute property damage under the terms of the policy." *Id.*

*Mellin v. N. Sec. Ins. Co., Inc.*, 167 N.H. 544 (2015) (Apr. 24, 2015) is also instructive. There, the insureds owned a condo that they rented to various tenants. Shortly after renting the upstairs unit, a tenant moved out complaining of a cat urine odor which had come through an open plumbing chase from the downstairs unit where another tenant owned multiple cats. The insureds sought coverage under their homeowner's insurance policy due to the "direct physical loss" caused by the cat urine odor. The insurer said coverage did not apply because the smell did not constitute a "physical loss." The trial court agreed with the insurer but the New Hampshire Supreme Court reversed the decision, finding in favor of the insureds. It held that "physical loss" to property need not be limited to changes that could be seen or touched, but could also include changes perceived by smell. *Id.* at 548.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

Even in cases ultimately finding no business income coverage, courts reason that the presence of smoke from wildfires can constitute physical loss or damage to property. For example, in *White Mountain Communities Hosp. Inc. v. Hartford Cas.*, 2015 WL 1755372 (D. Ariz. 2015), the insurer paid the hospital's business income loss during the period that smoke from nearby wildfire's permeated the building. The insured nevertheless sought additional business income after the smoke had cleared. The court declined to find further coverage because there was no evidence that there was any smoke inside the building that required the hospital to turn away patients. *Id.* at *2. But the necessary implication of the court's reasoning is that, like OSF's patrons, if there had been smoke in the building that required patients to be turned away there would be sufficient physical loss or damage to trigger business income coverage. Not to mention the insurer's recognition that smoke can constitute "physical loss or damage" to property by initially paying the claim.

Here, like the odor in *Trutanich*, the gas in *Gregory Packaging*, and the ash particulates in *Schlamm Stone*, the presence of very unhealthful levels of smoke that filled the space inside the Elizabethan Theatre, and the air that occupied that space, undeniably constitutes "physical loss or damage" to property. Ultimately, that was not the only physical loss or damage to property. However, even if it were the only physical loss or damage to property, case law clearly holds that smoke filling the inside of a building is exactly the type of loss or damage sufficient to satisfy the physical loss or damage to property requirement. Therefore, there should be no reasonable disputed question of material fact that OSF is entitled to partial summary judgment that the

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

wildfire smoke permeating the Elizabethan Theatre constituted "physical loss or damage" to property.

> **3.** **Even assuming that Great American could advance a reasonable alternative interpretation of "physical loss or damage" to property, thereby rendering the phrase ambiguous, Oregon's rules of policy interpretation dictate that the ambiguity be resolved in favor of OSF.**

At the very least, there is ambiguity regarding whether "physical loss or damage" to property includes smoke in the interior space of a building, which must be interpreted by Oregon courts in favor of coverage. Where OSF offers even a single reasonable interpretation of the disputed provision, that interpretation controls. *Hoffman Constr. Co. v. Fred S. James & Co. of Or.*, 313 Or. 464, 469-71, 836 P.2d 703 (1992). And, as above, an interpretation that smoke filling the inside of the Elizabethan Theatre constitutes "physical loss or damage" to property is not just reasonable, it is precisely what Oregon courts, as well as courts across the country construing the phrase, have concluded. That renders irrelevant any contrary contention by Great American. There is simply no universe in which Great American can realistically claim that the *only* possible interpretation of "physical loss or damage" to property excludes the smoke inside the interior space of the Elizabethan Theatre.

Therefore, again, while the amount of OSF's loss and its resulting damages are genuine issues of material fact for the jury, there can be no disputed question of material fact that the smoke permeating the interior space of the Elizabethan Theatre was "physical loss or damage" to property. OSF is entitled to partial summary judgment on that issue accordingly.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

C. **Further, the plain terms of definition of "period of restoration" include the time it took for the smoke inside the Elizabethan Theatre to dissipate.**

The definition "period of restoration" says that it begins "at the time of direct physical loss or damage for Business Income Coverage" and ends "when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality."

As above, there was "physical loss or damage" to property at the time smoke permeated the interior of the Elizabethan Theatre. And the plain meaning of "repair" is "to restore to a sound or healthy state" or "the state of being in good or sound condition." Webster's Third New Int.'l, Dictionary 1923 (unabridged ed. 1993). A plain-language, common sense interpretation of the definition of "period of restoration" therefore refers to any period of time between the infiltration of smoke into the building and the time the interior of the theater returns to a sound or healthy state. That, by definition, is the time it took for the smoke to dissipate. There is no reasonable dispute that the theater simply could not have been restored in time to avoid the cancellations. Thus, OSF is entitled to partial summary judgment finding that the "period of restoration" includes the time it took for the smoke in the theater to dissipate under the plain terms of the Policy.

Likewise, construing the period of restoration to include the time it takes for the smoke to dissipate is not just a reasonable interpretation, it is precisely what courts in similar circumstances have concluded. As *Gregory Packaging* makes clear, the time it takes for gas or, in this case, smoke, to dissipate constitutes the "period of restoration." *Gregory Packaging*, 2014 WL 6675934. *7-8. In fact, as the foregoing cases

demonstrate, the "period of restoration" necessarily includes the time required for the odor, particulate matter, or contaminant to no longer be present in the building. The "period of restoration" also includes any period of time the theater was physically dysfunctional due to the smoke. That has already been answered as a matter of law. *See Stack Metallurgical Services Inc. v. Travelers Ind. Co. of Connecticut*, 2770 WL 464715 (D. Or.) (finding that a furnace contaminated with lead particles was not restored until it could be used for that which it was principally intended); *see also White Mountain Communities Hosp. Inc. v. Hartford Cas.*, 2015 WL 1755372 (D. Ariz. 2015), *supra*, (reasoning that if smoke contamination had rendered the hospital physically dysfunctional, there could be business income coverage for the lost revenue resulting from turning away patients).

Any attempt by Great American to claim otherwise has no merit. Even assuming it could, and "period of restoration" is considered ambiguous, this Court must defer to OSF's construction of the definition. As the foregoing cases demonstrate, particularly *Gregory Packaging*, construing "period of restoration" to mean the period of time it takes for the smoke to dissipate is not unreasonable. And where OSF offers even a single reasonable interpretation of a provision deemed ambiguous, that interpretation controls. *Hoffman Constr. Co. v. Fred S. James & Co. of Or.*, 313 Or. 464, 469-71, 836 P.2d 703 (1992). That effectively renders irrelevant any claim by Great American may have that the "period of restoration" cannot include the time it takes for the smoke to dissipate. OSF is therefore entitled to partial summary judgment on the issue.

PARSONS FARNELL & GREIN, LLP
Attorneys at Law
1030 SW Morrison Street
Portland, Oregon 97205
Telephone (503) 222-1812 FAX: (503) 274-7979

## VI. CONCLUSION

Wherefore, for all the foregoing reasons, as well as those advanced at oral argument and in any subsequent briefing, OSF respectfully requests that this Court enter partial summary judgment in its favor finding that (1) OSF suffered a business income loss; (2) the smoke inside the Elizabethan Theatre constitutes "physical loss or damage" to property; and (3) the "period of restoration" includes the time it took for the smoke to dissipate; as well as grant OSF (4) all other and further relief that the Court deems just and appropriate.

Dated this 22nd day of January, 2016

s/ Michael E. Farnell
Michael E. Farnell, OSB # 922996
E-mail Address: mfarnell@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Portland, Oregon 97205
Telephone: (503) 222-1812
Facsimile: (503) 274-7979
*Of Attorneys for Plaintiff*

# Certificate of Compliance

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 6,440 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, exhibits, and certificates of counsel.

Dated this 22nd day of January, 2016

s/ Michael E. Farnell
Michael E. Farnell, OSB # 922996
E-mail Address:  mfarnell@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Portland, Oregon 97205
Telephone:  (503) 222-1812
Facsimile:  (503) 274-7979
*Of Attorneys for Plaintiff*