**Douglas G. Houser**, OSB #600384
E-Mail: doug.houser@bullivant.com
**Matthew E. Hedberg**, OSB #081958
E-Mail: matt.hedberg@bullivant.com
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915
Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| OREGON SHAKESPEARE FESTIVAL ASSOCIATION, an Oregon non-profit corporation, <br><br>         Plaintiff, <br><br>   v. <br><br> GREAT AMERICAN INSURANCE COMPANY, an Ohio for-profit corporation, <br><br>         Defendant. | Civil No.: 1:15-cv-01932 <br><br> **DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT** <br><br> **Oral Argument Requested** |

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I. CERTIFICATE OF COMPLIANCE ................................................................. 1

II. MOTION .................................................................................................. 1

III. SUPPORTING MEMORANDUM OF LAW ................................................. 1

    A. Introduction ...................................................................................... 1

    B. Argument .......................................................................................... 2

        1. OSF's Breach of Contract Cause of Action Must Fail: ............... 2

            (a) None of the four separate losses falls within the Policy's coverage grant for business income loss. ......................... 2

                (i) OSF fails to meet its initial burden of proving that suspension of operations occurred during a "Period of Restoration." ............................................ 3

                (ii) Any suspension of business loss claimed by OSF was not caused by "Direct Physical Loss of or Damage to Property." ............................................ 6

            (b) None of OSF's four alleged losses fall within the Policy's coverage grant for extra expense coverage. .................... 9

            (c) None of OSF's four alleged losses were fortuitous. ...................... 11

            (d) The Great American insurance Policy contains exclusions which bar these claims. ................................................. 12

                (i) Smog .......................................................................... 12

                (ii) Delay, Loss of Use or Loss of Market ................................ 13

            (e) OSF's interpretation of the Policy contradicts public policy in Oregon. ...................................................... 14

        2. Oregon Courts Do Not Recognize OSF's Second Cause of Action for Breach of an Implied Covenant of Good Faith and Fair Dealing ....... 15

            (a) OSF's breach of the duty of good faith and fair dealing claim should be dismissed because there is no first-party tort liability available in this case. ...................................... 16

            (b) OSF's breach of the duty of good faith and fair dealing claim should be dismissed because it is duplicative. .............................. 17

            (c) OSF's breach of the duty of good faith and fair dealing claim should be dismissed because Great American's actions in adjusting the losses were permitted by the contract of insurance. ........................................................ 18

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page i**

3.  OSF's first-party negligence claim is not actionable in Oregon.................. 20

C.  Conclusion ......................................................................................................... 21

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Bennett v. Farmers Ins. Co.*,
  332 Or. 138, 26 P.3d 785 (2001) ....................................................................16

*Braun–Salinas v. Am. Family Ins. Grp.*,
  No. 3:13–CV–00264–AC, 2014 WL 1333731 (D. Or. Apr. 1, 2014) ....................................21

*Employers' Fire Ins. Co. v. Love It Ice Cream Co.*,
  64 Or. App. 784, 670 P.2d 160 (1983).........................................................20

*Farmers Insurance Co. of Oregon v. Trutanich*,
  123 Or. App. 6, 858 P.2d 1332 (1993).........................................................7

*Farris v. U.S. Fid. and Guar. Co.*,
  284 Or. 453, 587 P.2d 1015 (1978) ..............................................................16

*Georgetown Realty, Inc. v. Home Ins. Co.*,
  313 Or. 97, 831 P.2d 7 (1992) (en banc) ....................................................20

*Great N. Ins. Co. v. Benjamin Franklin Fed. S & L Ass'n*,
  793 F. Supp 259 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992)..................6, 7

*Keetch v. Mut. of Enumclaw Ins. Co.*,
  66 Wn. App. 208, 831 P.2d 784 (1992) ........................................................4

*Klamath Off-Project Water Users, Inc.*,
  237 Or. App. 434, 240 P.3d 94 (2010).........................................................18

*Malbco Holdings, LLC v. AMCO Ins. Co.*,
  No. CV-08-585-ST, 2008 WL 5205202 (D. Or. 2008) ........................................17

*Nat'l Warranty Ins. Co. v. Greenfield*,
  24 F. Supp. 2d 1096 (D.Or. 1998) ...............................................................14

*Newman Myers Kreines Gross Harris, PC v. Great Northern Ins. Co.*,
  No. 13 Civ. 2177 (PAE), 2014 WL 1642906 (S.D. N.Y. April 24, 2014) ................8

*Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.*,
  489 F. Supp. 2d 326 (S.D. N.Y. 2007)..........................................................4

Bullivant|Houser|Bailey PC

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

DEFENDANT GREAT AMERICAN INSURANCE
COMPANY'S AMENDED MOTION FOR SUMMARY
JUDGMENT
Page ii

*Roundabout Theatre Co. v. Continental Casualty Co.*,
    302 A.D.2d 1, 751 N.Y.S.2d 4 (2002) ...................................................8

*Santilli v. State Farm*,
    278 Or. 53, 562 P.2d 965 (1977) .....................................................16

*Schneider Equipment, Inc. v. Travelers Indem. Co. of Ill.*,
    No. CV 04-1482-HA, 2005 WL 1565006 (D. Or. June 29, 2005) ...................13, 14

*Uptown Heights Assocs. Ltd P'ship v. Seafirst Corp.*,
    320 Or. 638, 891 P.2d 639 (1995) ..................................................18, 19

*Vail v. Country Mut. Ins. Co.*,
    No. 2:13-CV-02029-SU, 2015 WL 2207952 (D. Or. May 11, 2015)...................20

*ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.*,
    222 Or. App. 453, 194 P.3d 167 (2008)..............................................2

## STATUTES

Or.Rev.Stat. § 746.230..................................................................20

ORS 735.410............................................................................14

## OTHER AUTHORITIES

Contracts, § 291 .......................................................................11

Fed. R. Civ. P. 56......................................................................1

LR 7-1(a)(1)(A) ........................................................................1

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE
COMPANY'S AMENDED MOTION FOR SUMMARY
JUDGMENT
Page iii**

# I.  CERTIFICATE OF COMPLIANCE

As required by LR 7-1(a)(1)(A), Defendant Great American Insurance Company's ("Great American") counsel has made good faith efforts to resolve this dispute and has conferred with Plaintiff Oregon Shakespeare Festival Association's ("OSF") counsel by telephone on January 19, 2016, regarding this Motion.

# II.  MOTION

Pursuant to Fed. R. Civ. P. 56, Great American moves the Court for an Order granting summary judgment against OSF's Complaint [Dkt. #1] and in favor of Great American.

# III.  SUPPORTING MEMORANDUM OF LAW

## A.      Introduction

OSF seeks coverage under a Great American property policy for alleged business income and extra expense losses it experienced after it voluntarily chose to cancel four separate performances on four separate dates at its outdoor theatre during July and August of 2013.  There is no business interruption or extra expense coverage available, however, because the undisputed facts show that the performances were cancelled solely due to air quality concerns, and that smoke from wildfires did not cause "direct physical loss" or "damage" to covered property, as required for coverage under the Policy.  Indeed, OSF does not seek coverage for any damage or necessary repairs to its buildings for any of these four separate losses.  Nor was there any "period of restoration" as required by the contract of insurance.

OSF also attempts to make new law in Oregon by asking this Court to recognize first-party "bad faith."  OSF's attempt to create "bad faith" law in Oregon mirrors arguments that

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 1**

have been consistently rejected by the Oregon appellate courts. Great American requests that

this Court dismiss OSF's tort claims because they contradict established Oregon law.

**B.      Argument**

   **1.      OSF's Breach of Contract Cause of Action Must Fail:**

   **(a)      None of the four separate losses falls within the Policy's coverage
            grant for business income loss.**

Determining whether insurance coverage exists is a two-step process under Oregon

law. The insured has the burden of proof of first establishing that the loss falls within the

scope of the policy's coverage grant.[1] If the insured meets its initial burden, the insurer then

bears the burden of establishing that the loss is excluded by specific language in the policy.[2]

Here, OSF bears the initial burden of establishing that its alleged business income loss

falls within the general grant of coverage. Subject to its terms, conditions, exclusions, and

limitations, the Policy provides coverage for business income loss when the insured's

business operations are suspended because of direct physical loss or damage to property:

> We will pay for the actual loss of Business Income you sustain
> due to the necessary "suspension" of your "operations" during
> the "period of restoration." The "suspension" must be caused
> by direct physical loss of or damage to property at premises
> which are described in the Declarations and for which a
> Business Income Limit of Insurance is shown in the
> Declarations. The loss or damage must be caused by or result
> from a Covered Cause of Loss.[3]

---

[1] *ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.*, 222 Or. App. 453, 465, 194 P.3d 167, 174 (2008) (citations omitted).

[2] *Id.*

[3] Insurance Policy (Dkt. # 1-2), at 75 of 292.

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE
COMPANY'S AMENDED MOTION FOR SUMMARY
JUDGMENT
Page 2**

Thus, to prove coverage under the Policy, OSF must establish that it sustained a "suspension" of "operations" caused by "direct physical loss of or damage to property."

OSF cannot establish coverage under the Policy for a number of reasons. First, OSF did not suffer any "direct physical loss of or damage to property"; nor did it suspend operations during a "period of restoration"; thus coverage was never triggered under the Policy. As set forth in the Statement of Facts and in the discussion below, OSF cancelled the four separate performances *solely* due to health concerns related to air quality. OSF did not suffer any physical loss or damage to its property, it did not make any repairs to its property, and it is not seeking damages for the cost of any repairs.

     **(i)**     **OSF fails to meet its initial burden of proving that suspension of operations occurred during a "Period of Restoration."**

Coverage for business income loss requires that operations be suspended during a "period of restoration." The Policy, amended by endorsement, defines "period of restoration," in part, as:

> [T]he period of time that:
>
> **a.** Begins:
>
> > **(1)** at the time of direct physical loss or damage for Business Income Coverage; or
> >
> > **(2)** immediately after the time of direct physical loss or damage for Extra Expense Coverage;
>
> caused by or resulting from any Covered Cause of Loss at the described premises; and

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 3**

> **b.** Ends on the earlier of:
>
>> **(1)** the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>>
>> **(2)** the date when business is resumed at a new permanent location.[4]

Although Oregon courts have not directly ruled on the issue, court opinions regarding business income loss claims after the destruction of the World Trade Center in New York are informative. In the World Trade Center cases, many of the affected retail stores claimed that the "period of restoration" should continue until the World Trade Center was rebuilt. The courts disagreed.[5] The courts held that business interruption coverage requires business income losses arising out of the loss to "property," not merely "the business."[6] Likewise, in *Keetch v. Mut. of Enumclaw Ins. Co.*,[7] the Washington Court of Appeals in a Mount St. Helens volcanic eruption claim held, "the purpose of business interruption insurance is to indemnify for loss due to inability to continue to use specified premises."

Here, there was no "period of restoration" because OSF's property was not "repaired, rebuilt or replaced," nor did OSF move to a "new permanent location." In pre-suit communications, OSF argued that a "period of restoration" occurred when its employees removed soot and ash from the hard plastic seats and concrete floor of the outdoor theatre. However, OSF's employees did not repair, rebuild, or replace the seats or floor as there was

---

[4] Insurance Policy (Dkt. # 1-2), at 85 and 108 of 292.

[5] *See, e.g.*, *Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.*, 489 F. Supp. 2d 326, 332 (S.D. N.Y. 2007) (collecting cases).

[6] *Id.* at 331.

[7] 66 Wn. App. 208, 211, 831 P.2d 784, 786 (1992).

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 4**

no need to. Instead, they merely cleaned the seats and floor using rags and buckets of water.[8] The employees noted that the ash and soot "clean[ed] up pretty easily so no lasting harm was done."[9] Even if the work conducted by OSF's employees could somehow be interpreted to fall within the repair, rebuild, or replacement of "property" requirement, the theater was fully cleaned prior to each evening's scheduled performance. Significantly:

- OSF stated that the four cancelled performances were scheduled to take place at 8:00 p.m. at the outdoor theater.[10]

- OSF employees testified that they cleaned up the soot and ash well before any scheduled performances each day, generally by mid-afternoon, and that OSF never had to cancel a performance as a result of clean-up.[11]

- According to OSF Custodial Supervisor, Dane Coefer, "[w]e had enough staff to take care of [cleaning prior to the scheduled performances]."[12]

- OSF's Safety Manager, Janice Tacconi, stated that if the air quality had been better, OSF would have been in a position to hold performances each night.[13]

---

[8] Declaration of Jill Lee, Exhibit A (Rider EUO at 36:13-38:24); Exhibit B (Coefer EUO at 26:17-23); Exhibit C (Campbell EUO at 10:19-11:12); Exhibit D (Delgado EUO at 12:5-17); Exhibit E (Cruz EUO at 9:9-12).

[9] Lee Declaration, Exhibit F (Holden EUO at 25:21-26:7); Exhibit C (Campbell EUO at 13:9-25).

[10] Lee Declaration, Exhibit G (Wallace EUO 18:10-12).

[11] Lee Declaration, Exhibit A (Rider EUO at 36:13-38:24); Exhibit D (Delgado EUO at 12:5-17); Exhibit H (Faerber EUO at 18:1-25); Exhibit I (Resch EUO at 16:15-19).

[12] Lee Declaration, Exhibit B (Coefer EUO at 29:12-30:13).

[13] Lee Declaration, Exhibit J (Tacconi EUO at 32:2-25).

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 5**

- OSF's Executive Director, Cynthia Rider, provided a sworn statement that there were many days that soot and ash landed on the seats and floor in the outdoor theater, and OSF chose not to cancel the performance those evenings.[14]

Because the theater was fully cleaned and available for the scheduled performances, there was no "suspension" of "operations" that occurred during a "period of restoration" and, based on the undisputed facts, OSF cannot meet its burden to prove that operations were suspended during a "period of restoration."

      **(ii)    Any suspension of operations claimed by OSF was not caused by "Direct Physical Loss of or Damage to Property."**

The Policy requires that the suspension of operations be caused by the "direct physical loss of or damage to property." Case law from Oregon and other jurisdictions interprets this policy language to mean that "physical loss" requires damage that renders the building uninhabitable or unusable. For the reasons set forth below, OSF has failed to meet OSF's burden to prove that it suffered "direct physical loss of or damage to property."

In *Great Northern Insurance Co. v. Benjamin Franklin Federal Savings & Loan Association*, The Honorable Judge Owen Panner considered whether there was coverage for asbestos removal in a building.[15] Judge Panner properly concluded that there was no coverage, stating that the "building has remained physically intact and undamaged. ***The only loss is economic.***"[16]

---

[14] Lee Declaration, Exhibit A (Rider EUO at 44:2-21).

[15] 793 F. Supp 259 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992).

[16] *Benjamin Franklin*, 793 F. Supp at 263 (emphasis added).

Bullivant|Houser|Bailey PC

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**

**Page 6**

By contrast, in *Farmers Insurance Co. of Oregon v. Trutanich*,[17] the Oregon Court of Appeals ruled there was "direct physical loss" to a home "because the insured house had been physically damaged by the [methamphetamine] odor."[18] Indeed, in *Trutanich*, the insured claimed the house needed to be decontaminated and restored.[19] Here, OSF has not claimed any cost to remove pervasive smoke, as was the case in *Trutanich*. Instead, OSF claims a loss that is purely economic, as was the case in *Benjamin Franklin*, the asbestos case.[20]

The undisputed facts show that OSF did not suffer any direct physical loss or damage to its property, nor were any repairs made to its property.[21] Notably, 14 of OSF's employees and managers testified in Examinations Under Oath regarding this matter and not a single employee or manager was able to identify any "direct physical loss or damage" that resulted in cancellation of the four separate performances. To the contrary, OSF's employees and managers testified that the performances were cancelled solely due to poor "air quality from surrounding forest fires."[22]

---

[17] 123 Or. App. 6, 858 P.2d 1332 (1993).

[18] *Trutanich*, 123 Or. App. at 11, n.4, 858 P.2d at 1335.

[19] *Id.* at 8, n. 2, 858 P.2d at 1334.

[20] *See, e.g.,* Lee Declaration, Exhibit A (Rider EUO at 47:18-21, 50:8-51:10); Exhibit K (Roos EUO at 62:5-63:19 (testifying that OSF's business interruption claim is solely based on economic loss)).

[21] Lee Declaration, Exhibit A (Rider EUO at 47:18-21, 50:8-51:10); Exhibit K (Roos EUO at 62:5-63:19).

[22] Lee Declaration, Exhibit A (Rider EUO at 31:20-32:4); Exhibit L (Barry EUO at 11:18-12:3); Exhibit K (Roos EUO at 30:6-13).

Bullivant|Houser|Bailey PC

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 7**

Other cases around the country support the conclusion that OSF did not sustain a "direct physical loss of or damage to property," as required to trigger coverage for business income loss. In *Roundabout Theatre Co. v. Continental Casualty Co.*,[23] a small non-profit theatre in New York was forced to cancel performances when the theatre was rendered inaccessible to the public for several weeks by a municipal order closing the street for safety reasons. The appellate court in New York found Continental correctly denied coverage for the loss.[24] The court ruled there was no "direct physical loss or damage to the [insured's] property."[25] The court found "[t]he plain meaning of the words 'direct' and 'physical' narrows the scope of coverage and mandates the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy."[26]

In another similar case, the federal district court in New York found no coverage for business income losses of a law firm after the utility provider preemptively shut off power during and after Hurricane Sandy.[27] In that case, the court found that "direct physical loss or damage" requires "actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."[28]

---

[23] 302 A.D.2d 1, 6-7, 751 N.Y.S.2d 4 (2002).

[24] *Id.*

[25] *Id.*

[26] *Id.* at 7.

[27] *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323 (S.D. N.Y. 2014).

[28] *Id.* at 331.

Bullivant|Houser|Bailey PC

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 8**

Here, OSF has not suffered any "direct physical loss of or damage to property" under the Policy and has clearly failed to meet its initial burden of proving coverage under the Policy. Further, some of OSF's alleged damages do not arise from a "suspension" at all. Approximately half of OSF's alleged economic losses arise from "Canceled Orders on [Indoor] Non-Canceled Performances," attributed to loss of sales resulting from potential customers who decided not to travel to Southern Oregon due to the fires.[29]

 (b) **None of OSF's four alleged losses fall within the Policy's coverage grant for extra expense coverage.**

The Policy's Business Income (And Extra Expense) Coverage Form also provides coverage for "extra expense," which provides, in part:

> **a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

> **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

As discussed above, there was no "direct physical loss or damage" to covered property and there was no "period of restoration," which means the extra expense coverage was not triggered.

Even if extra expense coverage had been trigged by the policy, the work performed by OSF's employees did not result in any extra expenses to OSF. The outdoor theater floor

---

[29] Lee Declaration, Exhibit A (Rider EUO 39:13-40:1); Exhibit K (Roos EUO at 64:19 – 65:10); Exhibit M (OSF Business Interruption Insurance Claim Breakdown).

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 9**

is made of concrete and the seats are made of hard resin plastic.[30] OSF employees testified that they used rags and buckets of water to clean the seats and floor; no special chemicals or other cleaning equipment were needed.[31]

In addition to the lack of extra expense related to cleaning supplies, OSF did not pay any additional payroll expenses. Jerry Roos, OSF's Director of Finance and Administration, admitted that OSF employees were not paid overtime for the time spent cleaning the soot and ash.[32] OSF's custodial employees confirmed Mr. Roos's testimony. The employees testified that it took them between 20 minutes and one hour each day to clean up the soot and ash.[33] Their schedules remained the same; rather their duties were slightly reallocated to deal with the soot and ash.[34]

OSF is not entitled to extra expense coverage under the Policy because: (1) there was no "direct physical loss or damage" to covered property, nor a "period of restoration" to trigger the coverage; and (2) even if coverage had been triggered, OSF did not suffer any extra expenses.

---

[30] Lee Declaration, Exhibit B (Coefer EUO at 15:10-16:25); Exhibit N (photographs of Allen Elizabethan Theatre).

[31] Lee Declaration, Exhibit A (Rider EUO at 36:13-38:24); Exhibit B (Coefer EUO at 26:17-23); Exhibit C (Campbell EUO at 10:19-11:12); Exhibit D (Delgado EUO at 12:5-17); Exhibit E (Cruz EUO at 9:9-12).

[32] Lee Declaration, Exhibit K (Roos EUO at 62:5-63:19); Exhibit D (Delgado EUO at 13:8-25).

[33] Lee Declaration, Exhibit C (Campbell EUO at 12:7-21); Exhibit O (Solis EUO at 16:4-22).

[34] Lee Declaration, Exhibit C (Campbell EUO at 17:20-18:3); Exhibit O (Solis EUO at 18:14-23); Exhibit E (Cruz EUO 7:17-22).

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 10**

**(c)     None of OSF's four alleged losses were fortuitous.**

The Restatement of Contracts, §291, states:  "A fortuitous event . . . is an event which so far as the parties to the contract are aware, is dependent on chance."  As discussed below, insurance policies only provide coverage for fortuitous events.

In order to meet its initial burden of proving coverage under the Policy, OSF must prove that a fortuitous event caused "direct physical loss of or damage to covered property . . . caused by or resulting from any covered cause of loss."  Here, however, OSF's loss became a "certainty" when OSF made the voluntary decision to cancel the four separate performances.

Each evening, OSF's special committee analyzed detailed air quality criteria to determine whether to cancel the scheduled performance.[35]  As set forth in the Statement of Facts, none of the cancellation criteria relied upon by OSF included any reference to property damage, or any other "direct physical loss or damage to property."

No federal, state, or local agency, or public authority of any kind, ordered the cancellation of the performances.[36]  Further, prior to cancellation, OSF was well aware that cancellation of the performances would have a significant financial impact.[37]

In breach of OSF's duty to mitigate damages and try to avoid losses, OSF made the conscious and deliberate decision to cancel four separate performances at its outdoor theater without confirming whether those cancellations would be covered by insurance, or whether any direct physical loss or damage to property occurred.  Great American does not owe

---

[35] Lee Declaration, Exhibit P (Performance Cancellation Criteria).

[36] Lee Declaration, Exhibit A (Rider EUO at 29:9-30:5).

[37] Lee Declaration, Exhibit F (Holden EUO at 14:9-15:7).

Bullivant|Houser|Bailey PC

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT
Page 11**

coverage to OSF as a result of OSF's voluntary business decision for uncovered causes of loss.

      **(d)    The Great American insurance Policy contains exclusions which bar these claims.**

As discussed above, there should be no coverage for OSF's business income and extra expense claim because there is no "period of restoration" and no "direct physical loss of or damage to property." Even if OSF could trigger coverage under the insuring agreement, there would be no coverage because each of the four losses is excluded by specific Policy language. Two exclusions apply:

      **(i)    The exclusion for "smog" applies to any potential coverage.**

The Policy provides, in relevant part:

    **B.  Exclusions**

        * * * * *

      **2.**  We will not pay for loss or damage caused by or resulting from any of the following:

          * * * * *

        **d.**  * * * * *

            **(3)**   smog;

            * * * * *

The term "smog" is not defined in the Policy. According to the Oxford Dictionary, the plain meaning of "smog" is, "fog or haze combined with smoke and other atmospheric pollutants."[38] The Oxford Dictionary defines "haze" as "a slight obscuration of the lower

---

[38] http://www.oxforddictionaries.com/us/definition/american_english/smog; December 10, 2015.

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT
Page 12**

atmosphere, typically caused by fine suspended particles."[39]  The Policy defines "pollutants" as:

> [A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Jerry Roos testified at his EUO that smoke was "extremely thick" and "worse than" [smoggy].  It was bad.  It was eerie."[40]  Mr. Roos identified 3 photographs showing smoke particles in the air during times relevant to OSF's claims.[41]

According to OSF, the atmosphere was obscured by fine ash and soot particles.[42] Haze combined with smoke from the wildfires falls directly within the plain meaning of smog.  Thus, even if OSF was able to meet its initial burden of proving coverage under the Policy, such coverage is barred by the "smog" exclusion.

> **(ii)    The exclusion for "Delay, Loss of Use or Loss of Market" applies to any potential coverage.**

The Policy specifically excludes "loss or damage caused by or resulting from…[d]elay, loss of use or loss of market."  The Honorable Ancer Haggerty, speaking for the federal district court in Oregon, addressing an identical exclusion, explained that "[t]he provision's use of the terms 'delay' and 'loss of market' in the same phrase as 'loss of use' indicates that the exclusion covers intangible economic losses, not the type of tangible, direct

---

[39] http://www.oxforddictionaries.com/us/definition/american_english/haze#haze__2; December 10, 2015.

[40] Lee Declaration, Exhibit K (Roos EUO at 66:3-9).

[41] Lee Declaration, Exhibit Q (Photographs showing smoke particles).

[42] Lee Declaration, Exhibit F (Holden EUO at 20:7-23).

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT
Page 13**

damages resulting from direct physical loss at issue [in that case]."[43]  The court gave as an example that "loss of use" damages may refer to lost profits or diminution in value.

As set forth above, OSF did not suffer a direct physical loss from which it claims business income loss, and so there is no coverage under the policy.  Even if this claim came within the policy's coverage grant, it would nevertheless be excluded.  OSF's claimed losses result entirely from its voluntary decision to cancel four performances due to health concerns relating to poor air quality.  As a result, OSF's alleged losses would be excluded under the "loss of use" exclusion.

### (e) OSF's interpretation of the Policy contradicts public policy in Oregon.

Oregon law provides that when "admitted" Oregon insurers (such as Great American) do not provide a particular type of coverage, such coverage can be procured through a surplus lines insurer.[44]  Oregon courts have recognized that such surplus lines policies are only available when "admitted" carriers do not provide such coverage.[45]  Also, see attached Declaration of Josephine M. Driscoll, former Insurance Commissioner of Oregon and past President of the National Association of Insurance Commissioners.[46]

---

[43] *Schneider Equipment, Inc. v. Travelers Indem. Co. of Ill.*, No. CV 04-1482-HA, 2005 WL 1565006, at *9 (D. Or. June 29, 2005).

[44] ORS 735.410.

[45] *See Nat'l Warranty Ins. Co. v. Greenfield*, 24 F. Supp. 2d 1096, 1101 (D. Or. 1998) (noting, "insurance is available from a non-admitted surplus lines carrier only when insurance is not available from an admitted carrier").

[46] *See* Declaration of Josephine M. Driscoll.

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT
Page 14**

In Oregon, surplus lines carriers provide event cancellation coverage. OSF declined to purchase event cancellation insurance. And the Great American policy does not provide event cancellation coverage. Accordingly, a judicial finding that the Great American policy should cover an event cancellation loss would violate the public policy expressed in Oregon laws.

**2.      Oregon Courts Do Not Recognize OSF's Second Cause of Action for Breach of an Implied Covenant of Good Faith and Fair Dealing.**

OSF's Second Cause of Action is for "Breach of the Implied Covenant of Good Faith and Fair Dealing" and generally alleges that Great American breached a covenant of good faith by denying the insurance claim, taking multiple Examinations Under Oath, and causing OSF to incur expenses in responding to document requests.

Summary judgment against the Second Cause of Action is appropriate for three reasons. First, Oregon law is clear that tort claims against an insurance company in the first-party context are <u>not</u> permitted in Oregon. Second, the claim is duplicative of the breach of contract claim. And third, the actions Great American undertook to investigate OSF's claim were reasonable and expressly permitted by the insurance contract without any complaint or question from OSF until after the Examinations Under Oath were completed.

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT
Page 15**

<blockquote>
(a)     OSF's breach of the duty of good faith and fair dealing claim should be dismissed because there is no first-party tort liability available in this case.
</blockquote>

Oregon law does not allow for tort liability in the first-party context.[47] In *Farris v. U.S. Fid. and Guar. Co.*,[48] the insured tendered defense of a lawsuit to its insurer. The insurer denied the claim without any justification and noted in the claim file "let's bluff it out we can always buy out at a later date." After the insured settled the underlying action, it sued its insurer. Despite the insurance company's egregious behavior, the Oregon Supreme Court concluded that the denial of coverage only constituted a breach of contract, not a tort action. In so holding, the Court distinguished between first-party and third-party insurance claims.

In *Bennett v. Farmers Ins. Co.*,[49] the Oregon Supreme Court expanded on the distinction between first-party and third- party claims. In *Bennett*, the insured argued that a special relationship existed—which allowed for tort liability against the insurance company—because Farmers had exerted more and more control over the insured's financial interests. The Court disagreed, emphasizing that the focus of the "special relationship" was on the nature of the relationship, not the subject matter of the relationship. The court noted that a typical "special relationship" is created when an insurance company undertakes to defend its insured and exerts complete control over the litigation. In a first-party context, however, an insurer's liability to its insured is limited to breach of contract claims.

---

[47] *See, e.g,. Santilli v. State Farm*, 278 Or. 53, 562 P.2d 965 (1977); *Farris v. U.S. Fid. and Guar. Co.*, 284 Or. 453, 587 P.2d 1015 (1978).

[48] 284 Or. 453, 587, P.2d 1015 (1978).

[49] 332 Or. 138, 26 P.3d 785 (2001).

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 16**

Even if a special relationship existed in a first-party context, which it does not in Oregon, mere denial of a claim is not enough to establish a breach of the duty of good faith and fair dealing. Summary judgment against OSF's first-party tort claim is appropriate.

> **(b)** **OSF's breach of the duty of good faith and fair dealing claim should be dismissed because it is duplicative.**

OSF's breach of the duty of good faith and fair dealing claim is duplicative of its claim for breach of contract. This Court was faced with a similar situation in *Malbco Holdings, LLC v. AMCO Ins. Co.*[50] In *Malbco*, the plaintiff's first claim against the insurer was that it breached the relevant insurance policies by denying coverage.[51] Like in this case, the *Malbco* plaintiff attempted to make an additional claim alleging that the defendants breached the duty of good faith and fair dealing. This Court granted the insurance company defendants summary judgment because there is no first-party tort claim available in Oregon:

> As discussed above, Oregon does not recognize a tort claim against an insurer for breach of a duty of good faith and fair dealing. Instead, any claim for breach of good faith is incorporated into a breach of contract claim for failing to provide insurance coverage. Not being a separately cognizable claim under Oregon law, the Third Claim for breach of good faith and fair dealing is redundant and simply duplicates the First Claim by alleging a breach of contract. Accordingly, AMCO and Wausau are entitled to summary judgment against the Third Claim.[52]

Here, OSF's allegations in the breach of the duty of good faith claim all relate to the alleged breach of contract. There is no evidence to support any breach of a duty of good faith and fair dealing by Great American. Great American adjusted the loss pursuant to the

---

[50]No. CV-08-585-ST, 2008 WL 5205202, at *11 (D. Or. 2008).

[51] *Id*. at *6.

[52] *Id*. at *11.

Bullivant|Houser|Bailey PC

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 17**

terms, conditions, limitations, and exclusions of the insurance policy. OSF disagrees with the coverage determination, but mere disagreement is not actionable in tort. OSF seeks the exact same amount of damages that are being sought in the breach of contract claim. There is no evidence to support any alleged damages separate from those OSF alleges having arisen from the alleged breach of contract. The claim should be dismissed as duplicative of the breach of contract claim.

> **(c)** **OSF's breach of the duty of good faith and fair dealing claim should be dismissed because Great American's actions in adjusting the losses were permitted by the contract of insurance.**

The implied duty of good faith does not "operate in a vacuum," but "rather it focuses on the agreed common purpose and the justified expectations of the parties to the contract, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract."[53] The duty of good faith serves to effectuate the objectively reasonable expectations of the parties.[54] The duty cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract.[55]

In *Uptown Heights Assocs. Ltd P'ship v. Seafirst Corp.*,[56] the Oregon Supreme Court rejected a contractual duty of good faith and fair dealing claim based on the express terms of the contract between the parties despite the financial loss and damaged reputation suffered by

---

[53] *Klamath Off-Project Water Users, Inc.*, 237 Or. App. 434, 445, 240 P.3d 94, 101 (2010) (internal citations omitted).

[54] *Id.*

[55] *Id.*

[56] 320 Or. 638, 891 P.2d 639 (1995).

Bullivant|Houser|Bailey PC

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT
Page 18**

the plaintiff when defendant foreclosed on secured real estate. The court summarized the

established principles governing a contractual duty of good faith claim:

> [I]f a written contract between the parties expressly allows for a
> particular remedy by one of the parties, in the face of a specified
> breach, the parties' objectively "reasonable expectations" under
> the contract include the invocation of that remedy in the face of
> that breach. The party invoking its express, written contractual
> rights does not, merely by so doing, violate its duty of good
> faith.[57]

OSF never complained about the number of Examinations Under Oath until long after

the Examinations Under Oath were completed. OSF now alleges that Great American

breached a duty of good faith and fair dealing by taking numerous Examinations Under Oath

and requesting documents to support OSF's claim.[58] OSF characterizes the requests, and

Great American's motives for making the requests, in negative terms. But regardless of the

adjective used to describe the actions OSF complains of, there is no dispute that Great

American's actions were authorized by the insurance policy, which provides for taking

Examinations Under Oath and requesting documentation from an insured to support its

claim.[59] Great American took the Examinations Under Oath of each of the OSF employees

that OSF identified as having claim information.

Great American's actions in investigating OSF's insurance claim and requesting

information from OSF were expressly permitted by the contract of insurance. OSF's claim

for the breach of the implied duty of good faith and fair dealing should be dismissed.

---

[57] *Id*. at 643, 891 P2d at 644.

[58] Complaint (Dkt. #1), at 7-8.

[59] Insurance Policy (Dkt. # 1-4), at 226 of 292.

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE
COMPANY'S AMENDED MOTION FOR SUMMARY
JUDGMENT
Page 19**

### 3. OSF's first-party negligence claim is not actionable in Oregon.

A May 2015 decision written by the United States District Court for the District of Oregon granting an insurance company summary judgment against negligence per se claims provides the analysis for why OSF's negligence claim should be dismissed.

In *Vail v. Country Mut. Ins. Co.*,[60] the court cited the "well-established" law in Oregon that "tort remedies are not available in the context of an insurance dispute unless the defendant was subject to a standard of care independent of the terms of the underlying contract, such as where a special relationship exists."[61] And in the first-party context, there is not a special relationship to support a tort claim: "[A]n insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon."[62]

The court rejected the argument that the Oregon Unfair Claims Settlement Practice Act, which OSF attempts to rely on in this case, creates a standard of care that can support a first-party tort claim against an insurance company:

> Further, contrary to plaintiffs' assertion, Or.Rev.Stat. § 746.230 does not create an independent duty of care. "While a statute can provide a basis in law for liability, Oregon courts disfavor judicial establishment of a civil cause of action based on statute." Plaintiffs have not identified any authority holding that Or.Rev.Stat. § 746.230 creates an independent duty of care, despite being afforded the additional opportunity to do so at oral argument. In fact, numerous Oregon courts, including the Oregon Supreme Court, have explicitly rejected this argument.[63]

---

[60] No. 2:13-CV-02029-SU, 2015 WL 2207952 (D. Or. May 11, 2015).

[61] *Id*. at 8 (citing *Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or. 97, 106, 831 P.2d 7 (1992) (en banc)).

[62] *Employers' Fire Ins. Co. v. Love It Ice Cream Co.*, 64 Or. App. 784, 791, 670 P.2d 160, 165 (1983).

[63] *Id*. 3 (citations and internal quotations omitted).

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 20**

The District of Oregon has consistently held that "[b]ased on clearly established state law and the deference this court must show to the rulings of the Oregon courts, [ORS] 746.230 does not create a standard of care independent of the terms of the policies."[64] Accordingly, this Court should grant summary judgment against OSF's Third Cause of Action for Negligence.

## C. Conclusion

OSF's arguments presented by this case are not unique, and have been dealt with and rejected numerous times by courts interpreting Oregon law. An insurance policy that provides property coverage requires fortuitous "direct physical loss" or "damage" to covered property in order to initially trigger possible coverage provided by the policy. Even if OSF could prove the existence of direct physical loss or damage to covered property, OSF still could not prevail because its nonfortuitous, voluntary decision to cancel four performances was unrelated to any direct physical loss or damage. The cause of OSF's loss was OSF's voluntary decision to cancel performances because of unhealthy air quality conditions, not because of any alleged physical loss or damage.

OSF attempts to treat Great American's property policy as a health insurance policy that provides coverage for cancelled performances on account of hazardous air quality. Great American wrote a property policy, not an air or event cancellation policy. It would be contrary to the clear language of the insurance contract and against the public policy of Oregon to interpret the Great American policy to provide coverage for this claim.

---

[64] *Braun–Salinas v. Am. Family Ins. Grp.*, No. 3:13–CV–00264–AC, 2014 WL 1333731, *8 (D. Or. Apr. 1, 2014).

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT
Page 21**

OSF also asks this court to do what the Oregon Supreme Court has consistently been unwilling to do: permit an extra-contractual tort claim against a first-party insurer. The well-established Oregon law on these points should lead this Court to grant Great American's Motion for Summary Judgment in its entirety and dismiss OSF's lawsuit.

DATED: February 22, 2016

Respectfully Submitted,

BULLIVANT HOUSER BAILEY PC


By s/ Douglas G. Houser
    **Douglas G. Houser,** OSB #600384
    **Matthew E. Hedberg,** OSB #081958
    Telephone: 503.228.6351
    Attorneys for Defendant, Great American Insurance Company

15907188.1

**Bullivant|Houser|Bailey PC**

300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S AMENDED MOTION FOR SUMMARY JUDGMENT**
**Page 22**